CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:  (808) 464-4047
Facsimile:   (202) 204-5181
E-Mail:       kculpepper@culpepperip.com

Attorney for Plaintiffs
Venice PI, LLC,
Millennium Funding, Inc., and
Bodyguard Productions, Inc.

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Venice PI, LLC,<br>Millennium Funding, Inc., and<br>Bodyguard Productions, Inc.,<br><br>          Plaintiffs,<br>  vs.<br><br>STANISLAV AMELCHYTS, and<br>CLINTON BOVEE<br><br>        Defendants. | **Case No.: 17-cv-335-JAO-KJM**<br>(Copyright)<br><br>**THIRD AMENDED COMPLAINT;<br>DECLARATION OF DANIEL<br>ARHEIDT; DECLARATION OF<br>COUNSEL; DECLARATION OF<br>MARVIN YANGRELIG;<br>DECLARATION OF KODY KIM;<br>DECLARATION OF WAYMOND<br>NGAI; EXHIBITS 1-20**<br><br>**(1) DIRECT COPYRIGHT<br>    INFRINGEMENT**<br><br>**(2) CONTRIBUTORY<br>    COPYRIGHT<br>    INFRINGEMENT** |

## **THIRD AMENDED COMPLAINT**

Plaintiffs Venice PI, LLC, Millennium Funding, Inc., and Bodyguard Productions, Inc. (referred to sometimes hereafter collectively as "Plaintiffs"), file this Third Amended Complaint against Defendants STANISLAV AMELCHYTS and CLINTON BOVEE (referred to sometimes hereafter collectively as "Defendants") and allege as follows:

## I.   NATURE OF THE ACTION

1.   Plaintiffs bring this action to stop the massive piracy of their motion pictures brought on by the BitTorrent protocol software application Popcorn Time ("Popcorn Time").  The Defendant STANISLAV AMELCHYTS promotes Popcorn Time for the purpose of infringing copyright protected content to members of the public such as Defendant CLINTON BOVEE, who eagerly install Popcorn Time to watch copyright protected content as instructed, thereby helping achieving financial gain for Defendant STANISLAV AMELCHYTS.

2.   To halt Defendants' illegal activities, Plaintiffs bring this action under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, et seq. (the Copyright Act") and allege that Defendants are liable for (1) direct copyright infringement in violation of 17 U.S.C. §§ 106 and 501; and, (2) contributory copyright infringement.

## II.   JURISDICTION AND VENUE

3.   This Court has subject matter jurisdiction over this action pursuant to

17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4.      Defendant STANISLAV AMELCHYTS solicits, transacts, or is doing business within this jurisdiction, and has committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that his acts would cause injury in this jurisdiction.

5.      Defendant STANISLAV AMELCHYTS causes harm to Plaintiffs' business within this District (Hawaii) by diverting customers in this District to unauthorized Internet-based content distribution services through, at least, his promotion and distribution of Popcorn Time on various distribution channels including his website popcorn-time.to, the website uptodown.com and the Google play store.  As such, Defendant STANISLAV AMELCHYTS has sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over him.

6.      Popcorn Time, as promoted and distributed by Defendant STANISLAV AMELYCHYTS, maintains substantial continuous contacts with its users (including those in the United States and in Hawaii such as Defendant CLINTON BOVEE) after the users have installed it on their devices.

7.      As one example of such continuous contact, Popcorn Time, as promoted and distributed by Defendant STANISLAV AMELYCHYTS, performs a

17-335

handshake to connect one of its users' devices to another client who has a piece of a file desired by the users.  *See* Decl. of Arheidt at ¶11.

8.   Popcorn Time, as promoted and distributed by Defendant STANISLAV AMELYCHYTS, knows the Internet Protocol ("IP") addresses of its users, including that of Defendant CLINTON BOVEE in Hawaii, and that of the client device(s) having a piece of a file desired by the users.  Id.

9.   Popcorn Time, as promoted and distributed by Defendant STANISLAV AMELYCHYTS, facilitates the transfer of the file desired by the users such as Defendant CLINTON BOVEE from the client device to the users in this District and vice versa. Id.

10.   Popcorn Time, as promoted and distributed by Defendant STANISLAV AMELYCHYTS, purposely does not use geoblocking to filter out IP addresses from the United States and/or Hawaii.  Rather, Defendant STANISLAV AMELYCHYTS emphasizes that Popcorn Time has "No Restrictions".  *See* Decl. of Counsel at ¶10 (reshown below).

17-335



11.    In the alternative, the Court has personal jurisdiction over Defendant STANISLAV AMELCHYTS pursuant to Fed. R. Civ. P. 4(k)(2), the so-called federal long-arm statute, for at least the following reasons: (1) Plaintiffs' claims arise under federal copyright law; (2) the Defendant STANISLAV AMELCHYTS purposely directed his electronic activity into the United States and targets and attracts a substantial number of users in the United States and, more particularly, this District; (3) Defendant STANISLAV AMELCHYTS did so with the manifest intent of engaging in business or other interactions with the United States; (4) the Defendant STANISLAV AMELCHYTS is not subject to jurisdiction in any state's courts of general jurisdiction; and (5) exercising jurisdiction is consistent with the Constitution and laws of the United States.

12.    Defendant STANISLAV AMELCHYTS uses or has used the services

of numerous companies in the United States for promoting and distributing Popcorn Time including, but not limited to, Google LLC, BlackHOST Ltd, Velocity Servers, Inc. d/b/a ColoCrossing, Cloudflare, Inc and Tonic Domains Corporation.

13.    On the website popcorn-time.to (hereafter referred to sometimes as "website"), Defendant STANISLAV AMELCHYTS includes a forum where users can interact with him to work on software bugs and provide suggestions. *See* Exhibit "1".

14.    Users are required to register before they can use the forum and agree to the terms of use. Id.

15.    The terms require the user "not to post…material that may violate any laws be it of your country…" and "doing so may lead to you being...banned, with notification of your Internet Service Provider…" and state that "The IP addresses of all posts are recorded to aid in enforcing these conditions." Id.

16.    Users are further required to agree to comply the with United States Child Online Privacy and Protection Act of 1998 before they can register to join the forum. *See* Exhibit "2".

17.    Defendant   STANISLAV   AMELCHYTS   provides   the   website exclusively in English.

18.    Defendant's website includes a blog portion in which Popcorn Time is promoted as showing access to overwhelmingly if not all Hollywood motion

6

pictures.  *See* Exhibit "3".

19.   The  plurality  of  Internet  traffic  to  Defendant  STANISLAV AMELCHYTS's  website  popcorn-time.to  originates  from  the  United  States  of America.  *See* Exhibit "4".

20.   Defendant CLINTON BOVEE resides in, solicits, transacts, and is doing business within this jurisdiction, and has committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that his acts would cause  injury  in  this  jurisdiction.   As  such,  Defendant  CLINTON  BOVEE  has sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over him.

21.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c) because: (a) all or a substantial part of the events or omissions giving rise to the claims occurred in this District;  (b) the Defendant CLINTON BOVEE resides, and therefore  can  be  found,  in  this  District;  and  (c)(3)  Defendant  STANISLAV AMELCHYTS may be sued in this District.

### III.   PARTIES

### A.   The First Plaintiff, Venice PI, LLC.

22.   The First Plaintiff Venice PI, LLC ("Venice") is a limited liability company organized under the laws of California with principal offices in Los Angeles, California.

7

23.     Venice is an affiliate of Voltage Pictures, a production company with a notable catalog of major motion pictures. (www.voltagepictures.com).

24.     Venice is the owner of the copyright for the motion picture "*Once Upon a Time in Venice*", a major motion picture released in June of 2017.

25.     *Once Upon a Time in Venice* is about a private investigator who must follow a bizarre and comic path to recover his stolen dog.

## B. The Second Plaintiff Millennium Funding, Inc.

26.     The Second Plaintiff Millennium Funding, Inc. ("Millennium") is a corporation organized and existing under the laws of the state of Nevada with principal offices in Los Angeles, California.

27.     Millennium is a production company and distributor of a notable catalog of major motion pictures. (www.millenniumfilms.com).

28.     Per a merger with LHF Productions, Inc., Millennium is the owner of the copyright for the motion picture in the Second Work "*London Has Fallen",* a major motion picture released in 2016 and the sequel to the successful 2013 theatrical release *Olympus Has Fallen*.

29.     Per a merger with ME2 Productions, Inc., Millennium is the owner of the copyright for the motion picture in the Work "*Mechanic: Resurrection*" a major motion picture released in 2016 and the sequel to the highly successful 2011 film "*The Mechanic*".

17-335

30.    Per a merger with UN4 Productions, Inc., Millennium is the owner of the copyrights for the screenplay and motion picture in the Work "*Boyka: Undisputed IV*" a major motion picture released in 2017.

31.    Per a merger with Criminal Production, Inc., Millennium is the owner of the copyright for the motion picture in the Work "*Criminal*" a major motion picture released in 2017.

## C. The Third Plaintiff, Bodyguard Productions, Inc.

32.    The Third Plaintiff Bodyguard Productions, Inc. ("Bodyguard") is a corporation organized and existing under the laws of the State of Nevada.

33.    Bodyguard is the owner of the copyright for the motion picture in the Fourth Work "*The Hitman's Bodyguard*",  a major motion picture released in 2017.

34.    *The Hitman's Bodyguard* is an action movie directed by Patrick Hughes, and stars Ryan Reynolds as the world's top bodyguard, and Samuel L. Jackson as a hitman and his new client. *The Hitman's Bodyguard* tells the story of how the hitman and the bodyguard must put aside their difference and work together so that the hitman can testify at the International Court of Justice.

35.    The Plaintiffs' motion pictures will be referred to collectively sometimes here as the "Works".

## E.  The Defendants

## A. The First Defendant, STANISLAV AMELYCHYTS

9

17-335

36.     Upon    information    and    belief,    Defendant    STANISLAV AMELYCHYTS is a resident of Kyiv, Ukraine.

37.     Defendant   STANISLAV   AMELYCHYTS   maintains   a   publicly available website at the social media site FACEBOOK where he describes himself as being employed with the Russian software company Terrasoft as an account manager.  *See* Decl. of Counsel at ¶15.

38.     Terrasoft describes itself as the leading global provider of Customer Relationship Management software.

39.     Upon    information    and    belief,    Defendant    STANISLAV AMELYCHYTS by himself, or together with other individuals, developed at least one version of Popcorn Time.  *See* Exhibit 5 ([https://torrentfreak.com/popcorn-time-launches-new-bittorrent-tracker-fight-copyright-monopolies-161230/](https://torrentfreak.com/popcorn-time-launches-new-bittorrent-tracker-fight-copyright-monopolies-161230/))    [last accessed on Dec. 21, 2018].

40.     Defendant   STANISLAV   AMELYCHYTS   distributes   copies   of Popcorn time and promotes it for the infringing purpose of "watch torrent movies instantly", including Plaintiffs' copyright protected Works, via various distribution channels. *See* Decl. of Counsel at ¶10 (reshown below).

10



41.    Defendant STANISLAV AMELYCHYTS operates the interactive website www.popcorn-time.to as of June 14, 2018.  This website is one such distribution channel at which Defendant STANISLAV AMELYCHYTS distributes and promotes Popcorn Time.

42.    On the website, Defendant STANISLAV AMELYCHYTS describes Popcorn Time as having "No restrictions" and "Watch any movie or TV Show as many times as you want". Id.

43.    Defendant STANISLAV AMELYCHYTS states on the website, "Popcorn Time is an absolutely free service which enables millions…to watch almost all the movies that were ever screened on this planet…." and "Its main objective is to make the films available to…those who are unable to

17-335

consume…because they cannot afford to buy expensive [*sic*] dvd's or to subscribe to a local cable…or to Netflix." Id. at ¶25 (reshown below).



**Popcorn Time version 5.6 Beta for desktops now enables watching seamlessly DUBBED MOVIES!**

Popcorn Time is an absolutely free service which enables millions of people worldwide to watch almost all the movies that were ever screened on this planet or TV shows without being required to connect to sites full of click-baits, to pick a torrent.

Popcorn Time is a no-income not-for-profit activity. Its main objective is to make the films available to anybody, so that culture is spread, also to those who are unable to consume it otherwise, whether because they cannot afford to buy expensive dvd's or to subscribe to a local cable or satellite service or to Netflix.

44.   Defendant STANISLAV AMELYCHYTS's website includes a link to download Popcorn time Beta 6.0.

45.   Clicking on the link automatically starts download of an executable file that when installed on a computing device installs Popcorn time. *See* Decl. of Arheidt at ¶5.

46.   Defendant STANISLAV AMELYCHYTS uses a top level domain ".TO" which is the Internet country code domain of the island kingdom of Tonga and run by Tonic Domains Corporation in Tiburon, California.

47.   The name server for the website popcorn-time.to is a California based company Cloudflare, Inc.   *See* Decl. of Counsel at ¶18.   Cloudflare, Inc. has

17-335

indicated that an individual at Internet Protocol ("IP") address 46.211.156.252 at email address skyvap@mail.ru is responsible for the website.

48. Upon information and belief, Mail.ru is a Russian Internet company.

49. Publicly available geolocation records indicate that IP address 46.211.156.252 is owned by the Ukrainian telecommunication company Kyivstar.

50. The website popcorn-time.to was hosted by BlackHOST at IP address 185.142.237.9 as of June 14, 2018. *Id.*.

51. BlackHOST has indicated that the tenant at IP address 185.142.237.9 was STANISLAV AMELCHYTS of Kyiv Ukraine. *See* Exhibit "6".

52. The website is currently hosted by Velocity Servers, Inc. d/b/a ColoCrossing at IP address 107.175.38.120 as of December 24, 2018. *See* Decl. of Counsel at ¶18.

53. ColoCrossing has indicated that the current tenant at IP address 107.175.38.120 is Ipserver LP. *Id.* at ¶19.

54. Ipserver LP is a Russian company that provides rental services for dedicated and virtual services. *See* www.ipserver.su/en.

55. Defendant STANISLAV AMELYCHYTS uses the email address thetime4popcorn@gmail.com to solicit feedback. *See* Decl. of Counsel at ¶¶26-28.

56. Plaintiffs sent a copy of the Second Amended Complaint to Defendant at email address thetime4popcorn@gmail.com on July 18, 2018.

17-335

57. Within days of Plaintiffs' email of July 18, 2018, Defendant STANISLAV AMELCHYTS abruptly switched his Internet hosting service to ColoCrossing.

58. Upon information and belief, Defendant STANISLAV AMELCHYTS and/or his cohorts are currently using the services of Ipserver LP to host the website.

59. Upon information and belief, Defendant STANISLAV AMELCHYTS and/or his cohorts abruptly changed to using ColoCrossing under the services of Ipserver LP in an attempt to hide STANISLAV AMELYCHYTS's identify from Plaintiffs.

60. The Defendant STANISLAV AMELCHYTS also promotes and distributes a windows version of Popcorn Time on the website uptodown.com at specifically, popcorn-time.en.uptodown.com/windows (in English) and popcorn-time.uptodown.com/windows (in Spanish) as of December 21, 2018. *See* Decl. of Counsel at ¶20 (reshown below).

17-335



61.    Here, once again Defendant makes no secret of Popcorn Time's illegitimate purpose – infringing Copyright protected content by stating "Popcorn Time is an app that enables you to watch tons of streaming movies – from classics to new releases…".

17-335



62.    The Defendant STANISLAV AMELCHYTS also promotes and distributes an Android version of Popcorn Time on the website https://popcorn-time.en.uptodown.com/android as of December 21, 2018.  *See* Exhibit "20".

63.    The operators of the website uptodown.com have indicated that a third party uploaded Popcorn Time onto their website.  Upon information and belief, the third party was Defendant STANISLAV AMELCHYTS.

64.    The operators of the website uptodown.com store information for third parties that upload software applications to their website.

65.    The third party who uploaded Popcorn Time to the website uptodown.com indicated that their email address was thetime4popcorn@gmail.com, the same email address indicated by Defendant

16

STANISLAV AMELCHYTS on his website popcorn-time.to.  *See* Decl. of Counsel at ¶¶23-24.

66.   The third party who uploaded Popcorn Time to the website uptodown.com indicated that their official website was popcorn-time.se, which as of December 21, 2018, redirects to popcorn-time.to, Defendant STANISLAV AMELYCHYTS's website.  Id.



67.   As of December 21, 2018, the Defendant STANISLAV AMELYCHYTS's Windows version of Popcorn Time has been downloaded over 4,280,000 times from the website uptodown.com.  Id. at ¶20.

68.   As of December 21, 2018, the Defendant STANISLAV AMELYCHYTS's Android version of Popcorn Time has been downloaded over 12,146,000 times from the website uptodown.com.

69.   The Defendant STANISLAV AMELYCHYTS also promoted Popcorn Time as "Free Movies app" and distributed Popcorn Time in the Google Play app store.  *See* Decl. of Yangrelig at ¶3-4.

### B. The Second Defendant, CLINTON BOVEE

70.    Defendant CLINTON BOVEE is an individual who resides in Honolulu, Hawaii.

71.    Previously identified as Defendant DOE 15, Plaintiffs have discovered that Defendant CLINTON BOVEE is the individual at IP address 72.253.205.136 who infringed Venice's Copyright in the motion picture *Once Upon a Time in Venice* initially on 2017-6-19 4:06 UTC by sharing a copy with a group of BitTorrent users or peers whose computers are collectively interconnected for the sharing of a particular unique file, otherwise known as a "swarm" via "hash" number   SHA1:87613C90F985DC3142D60FBEA0BAF966F3D53A2A.    *See* Exhibit "7" (entries 137-140).

72.    Hawaiian Telcom, the Internet Service Provider (ISP) for IP address 72.253.205.136, indicated that the IP address 72.253.205.136 was assigned to Defendant CLINTON BOVEE's landlord Jamie Leong on 2017-6-19 4:06 UTC.

73.    Plaintiffs have discovered that Defendant CLINTON BOVEE is the same defendant identified as Defendant DOE 1 in an earlier copyright infringement case ("First Case") 1:17-cv-00165-RLP-NONE concerning the Copyrighted Work *Eliminators*.

74.    With regards to the First Case, Hawaiian Telcom also indicated that the IP address 72.253.205.136 was assigned to Defendant CLINTON BOVEE's landlord Jamie Leong on 2017-01-28 08:17:48 UTC.

75.    Defendant CLINTON BOVEE installed Popcorn Time on his computer. *See* Decl. of Ngai at ¶2.

76.    Defendant CLINTON BOVEE downloaded and/or shared a copy of the copyright protected Work *Eliminators* on 2017-01-28 08:17:48 UTC as shown in Exhibit 7.

77.    Defendant CLINTON BOVEE downloaded and/or shared a copy of *London Has Fallen* and thereby infringed the copyright on 2/6/2017 10:46 UTC as shown in Exhibit 7.

78.    Defendant CLINTON BOVEE downloaded and/or shared a copy of *Mechanic: Resurrection* and thereby infringed the copyright on 2/6/2017 11:49 UTC as shown in Exhibit 7.

79.    Defendant CLINTON BOVEE downloaded and/or shared a copy of the Copyright protected Work *Sniper Special Ops* on 4/4/2017 07:21:00 UTC as shown in Exhibit 7.

80.    Defendant CLINTON BOVEE downloaded and/or shared a copy of the Copyright protected Work *I Am Wrath* on 6/10/2017 07:19:00 UTC as shown in Exhibit 7.

81.    Defendant CLINTON BOVEE downloaded and/or shared a copy of the Copyright protected Work *Lady Bloodfight* on 8/6/2017 06:29:00 UTC as shown in Exhibit 7.

19

17-335

82.    Defendant CLINTON BOVEE downloaded and/or shared a copy of *The Hitman's Bodyguard* and thereby infringed the copyright on 9/4/2017 18:09 UTC.

83.    The Defendant CLINTON BOVEE has been confirmed sharing and/or downloading nearly 181 contents at the IP address from 12/21/2016 to 9/4/2017.

84.    All of the confirmed sharing and/or downloading shared a common Peer ID prefix "2D5554323231302D".

## IV.   JOINDER

85.    Pursuant to Fed. R. Civ. P. 20(a)(1), each of the Plaintiffs are properly joined because, as set forth in detail above and below, the Plaintiffs assert: (a) a right to relief arising out of the same transaction, occurrence, or series or transactions, namely the use of Defendant STANISLAV AMELYCHYTS's Popcorn Time by Defendant CLINTON BOVEE to infringe Plaintiffs' Works as promoted and instructed by Defendant STANISLAV AMELYCHYTS; and (b) that there are common questions of law and fact.

86.    Pursuant to Fed. R. Civ. P. 20(a)(2), each of the Defendants was properly joined because, as set forth in more detail below, the Plaintiffs assert: (a) a right to relief arising out of the same transaction, occurrence, or series or transactions, namely the use of Defendant STANISLAV AMELYCHYTS's Popcorn Time by Defendant CLINTON BOVEE to infringe Plaintiffs' Works; and

17-335

(b) that there are common questions of law and fact.

## V.   FACTUAL BACKGROUND

### *A. The First Plaintiff Owns the Copyright to the Work*

87.   Venice is the owner of the copyright for the motion picture *Once Upon a Time in Venice*.

88.   *Once Upon a Time in Venice* is the subject of copyright registration (Registration Number PA 2-039-391) for the motion picture, and this action is brought pursuant to 17 U.S.C. § 411.  *See,* Exhibit "8".

89.   Millennium is the owner of the copyrights for the motion pictures *London Has Fallen, Mechanic: Resurrection, Boyka: Undisputed IV* and *Criminal*.

90.   *London Has Fallen* is the subject of copyright registration (Registration Number PA 1-982-831) for the motion picture, and this action is brought pursuant to 17 U.S.C. § 411.  *See,* Exhibit "9".

91.    *Mechanic: Resurrection* is the subject of a copyright registration (Registration Number PA 1-998-057), and this action is brought pursuant to 17 U.S.C. § 411.  *See* Exhibit "10".

92.   *Criminal* is the subject of a copyright registration (Registration Number PA 1-984-029), and this action is brought pursuant to 17 U.S.C. § 411.

93.   *Boyka: Undisputed* is the subject of copyright registrations (Registration Number PA 2-031-176) for the motion picture and (Registration

17-335

Number PA 3-798-816) for the screenplay, and this action is brought pursuant to 17 U.S.C. § 411.  *See* Exhibit "11"

94.   Bodyguard Productions is the owner of the copyright for the motion picture *The Hitman's Bodyguard*.

95.   The motion picture *The Hitman's Bodyguard* is the subject of copyright registration (Registration Number PAu 3-844-508) for the motion picture, and this action is brought pursuant to 17 U.S.C. § 411.  *See,* Exhibit "12".

96.   Plaintiffs' motion pictures are currently offered for sale in commerce.

97.   Defendants had notice of Plaintiffs' rights through general publication and advertising associated with the motion picture, packaging and copies, and at least the credits indicated in the content of the motion picture which bore a proper copyright notice.   *See,* Exhibit "13".

**B. Defendant STANISLAV AMELYCHYTS intentionally induces users' Infringements of the Plaintiffs' Copyrights**

98.   Popcorn Time has been referred to in the news media as "Netflix for pirates". http://fortune.com/2016/02/26/popcorn-time-netflix-pirates/ [accessed on Dec. 24, 2018].

99.   Popcorn Time provides an interface so that users can easily copy and share copies of copyright protected content, including Plaintiffs'.

100.   The home interface of Popcorn Time includes a collection of title art

of popular motion pictures and a search bar where a user can enter words associated with a copyright protected motion picture they wish to copy. *See* Decl. of Arheidt at ¶6.

101.  Simply entering words associated with a motion picture automatically generates a pull down tab below the search bar with a narrowed selection of motion pictures associated with the words. Id.



102.  Upon selecting one of the narrowed selection of motion pictures, Popcorn Time generates a display including art of the motion picture, a description of the motion picture, and options to watch the motion picture in various high quality and language formats. Id. at ¶7.

17-335



103.   Upon clicking the "Watch It Now" button, Popcorn Time generates a pop-up window with language encouraging the user to enter into an agreement with a virtual private network ("VPN") provider to purchase VPN service.  Id. at ¶8.



104.   Upon information and belief, the VPN provider being promoted by Popcorn Time is in a financial relationship with Defendant STANISLAV AMELYCHYTS so that Defendant STANISLAV AMELYCHYTS profits when a user chooses to purchase the VPN.  *See* Decl. of Counsel at ¶24 (reshown below).



105.   Upon pressing the "Continue" button, Popcorn Time generates various screen shots of the motion picture while displaying the download progress and continuing to generate a pop-up window with language encouraging the user to

17-335

enter into the agreement with the VPN provider.  *See* Decl. of Arheidt at ¶9.





106.   Popcorn Time can be used to download a complete high resolution (1080p) copy of Plaintiffs' Works. Id. at ¶¶ 10, 13.

17-335

107.   Defendant STANISLAV AMELYCHYTS advertises Popcorn Time for being used for infringing Copyright protected Works, including Plaintiffs' on various channels, including, but not limited to, popcorn-time.to and uptodown.com.

108.   Popcorn Time uses the BitTorrent client protocol to allow users to download and share copyright protected content, including Plaintiffs' Works from Torrent sites.

109.   According to the BitTorrent Peer ID convention, the Client application sets the Peer ID and the first few characters are reserved to specify the Client application. See Exhibit "14".

110.   When Plaintiffs' investigator tested Popcorn Time to confirm that the Works could be copied, he was also assigned a Peer ID beginning with 2D5.  See Decl. of Arheidt at ¶11.

111.   All of the confirmed sharing and/or downloading associated with Defendant CLINTON BOVEE shared a common Peer ID prefix "2D5554323231302D", which also begun with 2D5.

112.   Defendant STANISLAV AMELYCHYTS distributed Popcorn Time to users, including Defendant CLINTON BOVEE on said various channels.

113.   Defendant CLINTON BOVEE installed Defendant STANISLAV AMELYCHYTS's Popcorn Time on his device.

114.   While holding himself out as Jamie Leong and/or speaking on her

behalf, Defendant CLINTON BOVEE admitted to using Popcorn Time among other piracy applications.  *See* Decl. of Ngai at ¶2.

115.   Defendant CLINTON BOVEE used Popcorn Time for its intended and unquestionably infringing purposes, most notably to obtain immediate, unrestricted, and unauthorized access to unauthorized copies of Plaintiffs' Copyrighted Works.

116.   Defendant STANISLAV AMELYCHYTS promotes the use of Popcorn Time for overwhelmingly, if not exclusively, infringing purposes, and that is how Defendant CLINTON BOVEE used Popcorn Time.

117.   Defendant STANISLAV AMELYCHYTS urges Popcorn Time users to download infringing content.

118.   Defendant STANISLAV AMELYCHYTS urges Popcorn Time users to share copies ("seed") copyright protected content by including an "enable seeding" check box.  Decl. of Counsel at ¶25.

17-335

← → C 🔒 Secure | https://blog.popcorn-time.to/page/2/                                    ⊕

Popcorn Time will live way past us... Unless there's like nuclear war or the world ends or something like that...
(touch wood).

What does beta 5.0 have in store for you all?

1. A complete make over with UI/UX that just screams – watch movies now!!!
2. Anime section – yes, lots of you asked for it, now you have it!
   Cartoons section – it's there now, not working yet, but will be activated in the next few days!
3. Seeding – Up until now upon downloading a movie with Popcorn Time you would seed the torrent
   only while it downloads. Un-intentionally we created a community of leaches (sorry community) and
   it's time to change that. In the new version there's an "enable seeding" check box, though just a few
   hours ago we found a few issues with this feature so at the moment it's disables and it will be enabled
   in the upcoming days.
4. Search suggestions (auto complete) – In case you're not sure about the full name of the movie...
5. Keyboard navigation
6. A huge and growing library of movies – Now lets see you guys find movies that are not on Popcorn
   Time 😊
7. Previously watched list – in case you don't know exactly what movies you've watched, what episode
   you're on etc.
8. Connection to several movie sources, so if one goes down for some reason, we've got you covered.
9. Bug fixes.

119.    Defendant  STANISLAV  AMELYCHYTS  uses  the  website(s)  to

announce  software  updates  to  Popcorn  Time  and  advertise  the  availability  of

infringing content. Id.

29

17-335





Download Popcorn Time

120.   The commercial value of Defendant STANISLAV AMELYCHYTS's Popcorn Time depends on high-volume copying of unauthorized content through Popcorn Time.   Defendant STANISLAV AMELYCHYTS promises his users reliable and convenient access to all the content they can download and users install Popcorn Time on their devices based on Defendant STANISLAV AMELYCHYTS's promotions and apparent success in delivering infringing content to his customers.

121.   Defendant STANISLAV AMELYCHYTS even asserts copyright protection for his website. Id. at ¶25.

30

17-335



solves the issue of "not enough space" some users were having.

To choose app's download location, a user must go to settings menu and there under downloads section, choose cache folder and choose the location which has more space.

Other than that we:

1. Added to player swipe control for volume, brightness and seek.
2. Added double tap option for play/pause video
3. Improved preparing and buffering speed
4. Added content providers
5. Fixed some crashes from crash reports

And we're feeling good 

 « Previous Page

© 2018 Popcorn Time – Blog All Rights Reserved.

### C. The Defendant CLINTON BOVEE Used Defendant STANISLAV AMELYCHYTS's Popcorn Time to Infringe the Plaintiffs' Copyrights

122.   Popcorn Time uses the BitTorrent protocol, which is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data.

123.   The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the

17-335

BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

### 1. Defendant CLINTON BOVEE Installed Popcorn Time onto his Computer

124.    A BitTorrent "Client" is a software program that implements the BitTorrent Protocol.  Defendant STANISLAV AMELYCHYTS's Popcorn Time is one such software program.

125.    Once installed on a computer, Popcorn Time serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

126.    Defendant CLINTON BOVEE installed Popcorn Time onto his computer.  *See* Decl. of Ngai. At ¶2.

### 2. The Initial Seed, Torrent, Hash and Tracker

127.    A BitTorrent user that wants to upload a new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using the Client he or she installed onto his or her computer.

128.    The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

17-335

129.   The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Work, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

130.   When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

131.   Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

132.   The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

133.   The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Work, on them and facilitates the exchange of data among the computers.

134.   Depending on the BitTorrent Client, a tracker can either be a dedicated

computer (centralized tracking) or each peer can act as a tracker (decentralized tracking.)

135.   Defendant STANISLAV AMELYCHYTS promoted his own tracker which is at https://popcorn-tracker.org/ as of June 14, 2018.  Decl. of Counsel at ¶¶31-32, Exhibit "5".





### 3. Torrent Sites

136.   "Torrent sites" are websites that index torrent files that are currently

being made available for copying and distribution by people using the BitTorrent protocol.  There are numerous torrent websites.

137.   Upon information and belief, Popcorn Time includes direct links to Torrent sites, and Defendant CLINTON BOVEE used Popcorn Time to go to a torrent site to upload and download Plaintiffs' copyrighted Works.

### 4. Uploading and Downloading a Work Through a BitTorrent Swarm

138.   Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Works) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

139.   The BitTorrent protocol causes the initial seeder's computer to send different pieces of the computer file, here the copyrighted Works, to the peers seeking to download the computer file.

140.   Once a peer receives a piece of the computer file, here a piece of the copyrighted Works, it starts transmitting that piece to the other peers.

141.   In this way, all of the peers and seeders are working together in what is called a "swarm."

142.   Here, Defendant CLINTON BOVEE participated in the same swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading

17-335

and downloading, and by other types of transmissions.

143.   In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Works here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Works to each of the peers. The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

144.   Once a peer has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed," because it continues to distribute the torrent file, here the copyrighted Works.

**5.   The Plaintiffs' Computer Investigators Identified the Defendant CLINTON BOVEE's IP Address as a Participant in a Swarm That Was Distributing the Plaintiffs' Copyrighted Works**

145.   The Plaintiffs retained Maverickeye UG ("MEU") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the Internet to reproduce, distribute, display or perform the Plaintiffs' copyrighted motion pictures.

146.   MEU used forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

36

147.   MEU extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of the Unique Hash Number.

148.   The IP addresses, Unique Hash Numbers, and hit dates contained on Exhibit "7" accurately reflect what is contained in the evidence logs, and show: (1) that Defendant CLINTON BOVEE had copied a piece of each of the Plaintiffs' copyrighted motion pictures identified by a respective Unique Hash Number.

149.   Through each of the transactions, the Defendant CLINTON BOVEE's computer used his identified IP address to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

150.   MEU's agent analyzed each BitTorrent "piece" distributed by the IP address listed on Exhibit "7" and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the respective Work.

151.   MEU's agent viewed the Work side-by-side with the digital media file that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

### 6. *The Plaintiffs' Computer Investigators analyzed Defendant's Popcorn*

17-335

### *Time and confirmed that it uses the BitTorrent protocol*

152.   The Plaintiffs requested Daniel Arheidt of MEU to install Popcorn Time from the website popcorn-time.to to confirm if it can be used to copy the Plaintiffs' Works. *See* Decl. of Arheidt at ¶3.

153.   Daniel Arheidt confirmed that Popcorn Time can be used to make high resolution copies of Plaintiffs' Works. Id. at ¶13.

154.   Daniel Arheidt used proprietary software Wireshark to analyze the network traffic and observed an unencrypted bittorrent handshake between IP addresses containing the hash 0D9E7ED5039C234B4383DB1C797522ADFC3CC2D0, which is a known hash for distributing the motion picture *Hitman's Bodyguard*. Id. at ¶11.

### *D. The Defendant STANISLAV AMELCHYTS contributed to Defendant CLINTON BOVEE's Infringement of Plaintiffs' Works.*

155.   Defendant CLINTON BOVEE learned about Popcorn Time from the website or one of Defendant STANISLAV AMELCHYTS' other distribution channels.

156.   The deceptive language of Defendant STANISLAV AMELCHYTS's promotions convinced Defendant CLINTON BOVEE that Popcorn Time allowed him to legally watch free movies.

157.   Defendant CLINTON BOVEE followed the instructions on Defendant

17-335

STANISLAV AMELCHYTS's website popcorn-time.to to download Popcorn Time to his device while in Hawaii.

158.   Upon information and belief, Defendant CLINTON BOVEE used Popcorn Time to copy and distribute the Plaintiffs' Works.

**E. The Defendant STANISLAV AMELCHYTS contributed to others' Infringements of Plaintiffs' Works.**

159.   Previously identified as Defendant DOE 5, David Cressman, a Hawaii resident, installed or had installed a version of Popcorn time on his device.

160.   David Cressman used Popcorn Time at IP address 76.172.3.23 to download and share a copy of the motion picture *Once Upon a Time in Venice* on June 20, 2017.  *See* Exhibit "15".

161.   David Cressman used Popcorn Time at IP address 76.172.3.23 to download and share multiple copies of the motion picture *Mechanic: Resurrection* on April 30, 2017.

162.   David Cressman used Popcorn Time at IP address 76.172.3.23 to download and share multiple copies of the motion picture *Boyka: Undisputed IV* between 6/5/2017-6/6/2017 April 30, 2017.

163.   An individual at IP address 72.234.164.9, previously identified as Defendant DOE 13C, installed Popcorn Time on his device and used Popcorn Time to download and share multiple copies of *Once Upon a Time in Venice* on July 10,

17-335

2017, *The Hitman's Bodyguard* on Sept. 8, 2017, *Mechanic: Resurrection* on Oct. 22, 2016, and *London Has Fallen* on April 20, 2016 and May 20, 2016. *See* Exhibit "16".

164.   An individual at IP address 70.212.131.178 in Hawaii installed Popcorn Time on his device and used Popcorn Time to download and share multiple copies of the motion picture *Once Upon a Time in Venice* on July 7, 2017 while in Hawaii.

165.   Marvin Yangrelig, a resident of Hawaii, installed Popcorn Time on his device from the Google Play app store in 2017.  *See* Decl. of Marvin Yangrelig at ¶¶ 1-2.

166.   Marvin Yangrelig believed Popcorn Time was a legitimate application to watch content because it was advertised as "Free Movies app" and was available in the Google Play store. Id. at ¶4.

167.   Marvin Yangrelig used Popcorn Time to download multiple copies of the motion pictures *Hitman's Bodyguard* between 3/16/2018 and 3/28/2018 and *Once Upon a Time in Venice* between 5/21/2018 and 5/28/2018.  Id. at ¶3.

168.   Zanzalie Matautia, a resident of Hawaii, had Popcorn Time installed on her device.  One or more members of her household used Popcorn Time at IP address 141.239.205.132 to download a copy of the motion picture *Hitman's Bodyguard* on January 4, 2018 and *Boyka: Undisputed* on November 12, 2017.

17-335

169.   Romel Malacas, a resident of Hawaii, installed Popcorn Time on his android device and used Popcorn Time at IP address 76.172.62.3 to download a copy of the motion pictures *Mechanic: Resurrection* on October 1, 2016, *Criminal* on August 27, 2016 and *Boyka: Undisputed IV* on 4/4/2017.

170.   An individual at Internet Protocol (IP) addresses 70.212.128.187 and 70.212.135.162 in Hawaii installed Popcorn Time on her device and used Popcorn Time to download and share multiple copies of the motion picture *Boyka: Undisputed IV* on April 15, 2017 while in Hawaii.  *See* Exhibit "17".

171.   Shirly Acosta, a Hawaii Resident, installed Popcorn Time on her device and used it at IP address 72.253.14.65 to download a copy of the motion picture *Mechanic: Resurrection* on September 27, 2016, the motion picture *Mr. Church* on October 27, 2016, and a copy of the motion picture *London Has Fallen* on July 7, 2016.

172.   Kody Kim, a Hawaii resident, installed a version of Popcorn Time from the website popcorn-time.to on his computer on July 25, 2016.  *See* Decl. of Kody Kim at ¶3.

173.   The language on Defendant STANISLAV AMELCHYTS's website led Kody Kim to believe that he could use Popcorn Time to watch free movies legally. Id at ¶¶4-5.

174.   Kody Kim used Popcorn Time to download at least a part of the motion

pictures *The Hitman's Bodyguard* and *Singularity* on or around November 8, 2017. Id. ¶¶6-7.

175.   A minor at Internet Protocol (IP) address 72.235.32.78 in Hawaii installed Popcorn Time on his device and used Popcorn Time download a copy of the motion picture *Mechanic: Resurrection* on January 15, 2017 while in Hawaii. *See* Exhibit "18".

176.   Romel Malacas, a resident of Hawaii, installed Popcorn Time on his android device and used Popcorn Time at IP address 76.172.62.3 to download a copy of the motion pictures *Mechanic: Resurrection* on October 1, 2016, *Criminal* on August 27, 2016 and *Boyka: Undisputed IV* on 4/4/2017.

177.   Fernando Oleynick, a resident of Hawaii, installed Popcorn Time on his device and used Popcorn Time at IP address 141.239.217.196 to download a copy of the motion picture *Mechanic: Resurrection* on December 4, 2016.  *See* Exhibit "19".

## VI. FIRST CLAIM FOR RELIEF

### (Copyright Infringement)

178.   Plaintiffs re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

179.   Plaintiffs are the copyright owner of the respective Works which contains an original work of authorship.

17-335

180.   By using Popcorn Time and the processes described above, Defendant CLINTON BOVEE copied the constituent elements of the motion *pictures Once Upon a Time in Venice*, *London Has Fallen*, *Mechanic: Resurrection* and *The Hitman's Bodyguard* that are original.

181.   Each of the Plaintiffs did not authorize, permit, or provide consent to the Defendant CLINTON BOVEE to copy, reproduce, redistribute, perform, or display their Copyright protected motion pictures.

182.   As a result of the foregoing, Defendant CLINTON BOVEE violated each of the Plaintiffs' exclusive right to: (A) Reproduce the Work in copies, in violation of 17 U.S.C. §§ 106(1) and 501; (B) Redistribute copies of the Work to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501; (C) Perform the copyrighted Work, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Work's images; and, (D) Display the copyrighted Work, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the Works non-sequentially and transmitting said display of the Works by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publicly" display.)

183.   By engaging in the infringement alleged in this Complaint, the Defendant CLINTON BOVEE deprived not only the producer of the Works from

income that could have been derived when this film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets in Hawaii and their employees, and, ultimately, the local economy.  The Defendant CLINTON BOVEE's misconduct therefore offends public policy.

184.   The Plaintiffs have suffered damages that were proximately caused by the Defendant CLINTON BOVEE's copyright infringements including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

## VII. SECOND CLAIM FOR RELIEF

### (Contributory Copyright Infringement)

185.   Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

186.   By participating in the BitTorrent swarm, Defendant CLINTON BOVEE induced, caused or materially contributed to the infringing conduct of other unnamed individuals.

187.   The Plaintiffs did not authorize, permit, or provide consent to the Defendant CLINTON BOVEE inducing, causing, or materially contributing to the infringing conduct of other unnamed individuals.

188.   Defendant CLINTON BOVEE knew or should have known that the other BitTorrent users in a swarm with it were directly infringing the Plaintiffs'

17-335

copyrighted Works by copying constituent elements of the registered Works that are original.  Indeed, Defendant CLINTON BOVEE directly participated in and therefore materially contributed to others' infringing activities.

189.  By engaging in the contributory infringement alleged in this Complaint, the Defendant CLINTON BOVEE deprived not only the producer of the Works from income that could have been derived when this film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets in Hawaii and their employees, and, ultimately, the local economy.  The Defendant CLINTON BOVEE's misconduct therefore offends public policy.

190.  The Plaintiffs have suffered damages that were proximately caused by the Defendant CLINTON BOVEE's contributory copyright infringement including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

## VIII. THIRD CLAIM FOR RELIEF
### (Contributory Copyright Infringement based upon Inducement of Torrenting)

191.  Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

192.  Plaintiffs are the copyright owners of the Works which each contains an original work of authorship.

17-335

193.   Defendant STANISLAV AMELCHYTS had actual knowledge of third parties' infringement of Plaintiffs' exclusive rights under the Copyright Act.

194.   Defendant STANISLAV AMELCHYTS intentionally induces the infringement of Plaintiffs' exclusive rights under the Copyright Act, including infringement of Plaintiffs' exclusive right to distribute and/or publicly perform copies of Copyrighted Works. As intended and encouraged by Defendant STANISLAV AMELCHYTS, Popcorn Time connects users to Torrent sources and/or sites that deliver copies of Plaintiffs' Copyrighted Works.  The operators of these Torrent sources/sites directly infringe Plaintiffs' exclusive rights by providing unauthorized copies of the works to the public, including to Popcorn Time users.

195.   Once the Popcorn Time user has obtained a complete copy of the Plaintiffs' Copyrighted Works, that particular user also becomes another Torrent source that delivers copies of Plaintiffs' Copyrighted Works.

196.   These operators, or others operating in concert with them, control the facilities and equipment used to store and distribute the content, and they actively and directly cause the content to be distributed when Popcorn Time users click on a link for the content.

197.   Defendant STANISLAV AMELCHYTS induces the aforementioned acts of infringement by supplying Popcorn Time that facilitates, enables, and creates direct links between his users and the infringing Torrent sources, and by actively

17-335

inducing, encouraging and promoting the use of Popcorn Time for blatant copyright infringement.

198.   Defendant STANISLAV AMELCHYTS's intentional inducement of the infringement of Plaintiffs' rights in each of their Copyrighted Works constitutes a separate and distinct act of infringement.

199.   Defendant STANISLAV AMELCHYTS's inducement of the infringement of Plaintiffs' Copyrighted Works is willful, intentional, and purposeful, and in disregard of and with indifference to the rights of the Plaintiffs.

200.   Defendant STANISLAV AMELCHYTS's actions are a direct and proximate cause of the infringements of Plaintiffs' Works.

## IX. FOURTH CLAIM FOR RELIEF
### (Contributory Copyright Infringement based upon Material Contribution)

201.   Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

202.   Defendant STANISLAV AMELCHYTS has actual or constructive knowledge of infringement of Plaintiffs' exclusive rights under the Copyright Act. Defendant STANISLAV AMELCHYTS knowingly and materially contributes to such infringing activity.

203.   Defendant STANISLAV AMELCHYTS knowingly and materially contributes to the infringement of Plaintiffs' exclusive rights under the Copyright

17-335

Act, including infringement of Plaintiffs' exclusive right to publicly perform and distribute their works. Defendant STANISLAV AMELCHYTS designs and promotes the use of Popcorn Time to connect customers to unauthorized online sources to download copies of Plaintiffs' Copyrighted Works.  The operators of these source repositories directly infringe Plaintiffs' public performance rights by providing unauthorized copies of the works to the public, including to Popcorn Time users. The operators, or others operating in concert with them, control the facilities and equipment used to store and deliver copies of the content, and they actively and directly cause the content to be distributed when Popcorn Time users click on a link for the content.

204.   Defendant STANISLAV AMELCHYTS knowingly and materially contributes to the aforementioned acts of infringement by supplying the software application that facilitates, encourages, enables, and creates direct links between Popcorn Time users and infringing operators of the Torrent services, and by actively encouraging, promoting, and contributing to the use of their Popcorn Time for blatant copyright infringement.

205.   Defendant STANISLAV AMELCHYTS's knowing and material contribution to the infringement of Plaintiffs' rights in each of their Copyrighted Works constitutes a separate and distinct act of infringement.

206.   Defendant STANISLAV AMELCHYTS's knowing and material

contribution to the infringement of Plaintiffs' Copyrighted Works is willful, intentional, and purposeful, and in disregard of and with indifference to the rights of Plaintiffs.

207.   As a direct and proximate result of the infringement to which Defendant STANISLAV AMELCHYTS  knowingly and materially contributes, Plaintiffs are entitled to damages and Defendant STANISLAV AMELCHYTS's profits in amounts to be proven at trial.

208.   Defendant STANISLAV AMELCHYTS obtained a direct financial interest, financial advantage, and/or economic consideration from the infringements in Hawaii as a result of their infringing actions in the United States.

209.   Defendant STANISLAV AMELCHYTS's actions are a direct and proximate cause of the infringements of Plaintiffs' Works.

WHEREFORE, the Plaintiffs respectfully requests that this Court:

(A) permanently enjoin Defendant CLINTON BOVEE from continuing to infringe the Plaintiffs' copyrighted Works;

(B) order that Defendant CLINTON BOVEE delete and permanently remove the torrent file relating to the Plaintiffs' copyrighted Works from each of the computers under Defendant's possession, custody, or control;

(C) order that Defendant CLINTON BOVEE delete and permanently remove the copy of the Works Defendant CLINTON BOVEE has on the computers under

17-335

the Defendant CLINTON BOVEE's possession, custody, or control;

(D) enter temporary, preliminary and permanent injunctions enjoining Defendant STANISLAV AMELCHYTS and those under his control from continuing to contribute to infringement of the Plaintiffs' copyrighted Works;

(E) Entry of an Order pursuant to 28 U.S.C §1651(a), The All Writs Act, that, the operator of the websites: (i) popcorn-time.to; and (ii) popcorn-tracker.org immediately remove all versions of the software application Popcorn Time from their website and any references to a Popcorn Tracker;

(F) Entry of an Order pursuant to 28 U.S.C §1651(a), The All Writs Act, that, the domain popcorn-time.to be transferred by the Registrar Tonic Domains Corporation to Plaintiffs' control.

(G) Entry of an Order pursuant to 28 U.S.C §1651(a), The All Writs Act, that, upon Plaintiffs' request, those in privity with Defendant STANISLAV AMELCHYTS and those with notice of the injunction, including any Internet search engines, Web hosts, name servers, domain-name registrars, and domain name registries and/or their administrators that are provided with notice of the injunction, cease facilitating access to any or all domain names and websites through which Defendant STANISLAV AMELCHYTS engages in the distribution and promotion of Popcorn Time;

(H) award the Plaintiffs either their actual damages and any additional profits

50

17-335

of the Defendant STANISLAV AMELCHYTS  pursuant to 17 U.S.C. § 504(a)-(b)

or statutory damages of $150,000 per work pursuant to 17 U.S.C.  § 504-(a) and (c),

whichever is greater;

(I) award the Plaintiffs their reasonable attorneys' fees and costs pursuant to

17 U.S.C. § 505; and

(J) grant the Plaintiffs any and all other and further relief that this Court deems

just and proper.

DATED: Kailua-Kona, Hawaii, December 28, 2018.


CULPEPPER IP, LLLC

/s/ Kerry S. Culpepper
Kerry S. Culpepper

Attorney for Plaintiffs
Venice PI, LLC.
Millennium Funding, Inc., and
Bodyguard Productions, Inc.

17-335